UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| VINCENTE F. GIBBS | : | |
| | : | |
| v. | : | C.A. No. 07-353A |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") benefits under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on September 17, 2007 seeking to reverse the decision of the Commissioner. On March 7, 2008, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (Document No. 7). On April 4, 2008, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 8). Plaintiff filed a reply brief on April 18, 2008. (Document No. 9).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I order that the Commissioner's Motion for

an Order Affirming the Decision of the Commissioner (Document No. 8) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 7) be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for SSI on April 28, 2004, alleging disability as of April 12, 2004. (Tr. 49-51). The application was denied initially (Tr. 36, 44-46) and on reconsideration. (Tr. 37, 40-42). On April 4, 2007, a hearing was held before Administrative Law Judge Hugh S. Atkins (the "ALJ") at which Plaintiff, represented by counsel, and a medical expert appeared and testified. (Tr. 136-149).

On April 13, 2007, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 8-14). Plaintiff appealed to the Appeals Council by filing a request for review. (Tr. 7). The Appeals Council denied Plaintiff's request for review on July 12, 2007. (Tr. 3-5). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff does not contest the ALJ's findings with regard to his physical impairments. Plaintiff does, however, contend that the ALJ erred by failing to conclude at Step 2 that his mental impairments were "severe" as defined in 20 C.F.R. § 416.920(c).

The Commissioner disputes Plaintiff's claims and asserts that the ALJ's decision is supported by substantial evidence in the record.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's

decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at

1095. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

**IV. DISABILITY DETERMINATION**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

**A. Treating Physicians**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a

claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B. Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human

Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C. Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D. The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do

not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E. Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this

burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1. Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical

impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2. Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

Plaintiff was forty-nine years old at the time of the ALJ hearing. (Tr. 47). Plaintiff completed high school and attended two years of college (with no degree); and his only past relevant work is sorting clothes for four months in 1998 and doing sanitation work for three months in 2001. (Tr. 68, 76-79). At the time of his ALJ hearing, Plaintiff was serving a three-year sentence for attempting breaking and entering and possession of burglary tools. (Tr. 140); State v. Gibbs, P2-2007-0066A. Plaintiff has a lengthy criminal history and prior periods of incarceration. Plaintiff initially alleged disability due to lower back problems, being sexually assaulted and being TB positive. (Tr. 75). He later included depression. (Tr. 52).

During late 2005 and into 2006, Plaintiff was treated sporadically at Crossroads Rhode Island, a free medical clinic. (Tr. 119-127). Plaintiff's complaints included chronic back problems, right knee pain, positive TB test and depression. (Tr. 119). Plaintiff missed several appointments but returned in May 2006 with complaints of right knee and lower back pain. (Tr. 124). Plaintiff was asked to complete mental health questionnaires. The first time, he said he experienced

depressive symptoms for several days out of the prior two weeks, which made it "somewhat difficult" to "do your work, take care of things at home or get along with other people." (Tr. 120). The second time, in May 2006, Plaintiff indicated that he was feeling depressed "nearly every day," had other depressive symptoms "more than half the days" and again rated his problems as "somewhat difficult." (Tr. 125).

Records from the Rhode Island Department of Corrections reflect that in December 2004, Plaintiff was complaining of low back pain, right hand pain from a recent injury and an inability to sleep. (Tr. 89). In December 2006, Plaintiff requested psychiatric services while incarcerated and was seen by a therapist, Kendra B. Capalbo, MSW, who noted his affect was appropriate, his mood was euthymic, he was oriented and had no suicidal or homicidal ideation. (Tr. 114). Because Plaintiff reported he was not in treatment while out of prison, no treatment was provided, and he was told to request treatment again if his symptoms worsened. Id.

On May 15, 2006, Plaintiff was evaluated by a psychologist, John P. Parsons, Ph.D., at the request of his attorney. (Tr. 96). Dr. Parsons diagnosed, on Axis I, major depressive disorder, recurrent, moderate, opioid dependence in early partial remission, partner relational problem and nicotine dependence; and on Axis II, personality disorder, not otherwise specified with antisocial and schizotypal features. (Tr. 101). He rated Plaintiff's global assessment of functioning ("GAF") at 49. Id. Dr. Parsons noted that Plaintiff's "attention and concentration spans were impaired, and it was difficult for him to stay focused. He needed constant reminders to stay focused and answer the questions presented." (Tr. 97). Plaintiff reported that he had been arrested twice as a juvenile and ten times as an adult for "breaking and entering and various drug charges." Id. He said he had six adult children, only two of whom he retained telephone contact with. (Tr. 98). He said he had

seven jobs since leaving high school in 1975, the longest of which was for two years. Id. Although Plaintiff had a history of cocaine and heroin use, he reported no illegal drug use since October 2005. Id. He also said he had been homeless since that time. (Tr. 99). Dr. Parsons reported that Plaintiff "has acquaintances but no close friends outside of his family. He has always had difficulty trusting people." Id. On the Beck Anxiety inventory, Plaintiff's responses indicated mild to moderate anxiety and on the Beck Depression inventory, moderate problems were indicated. Id. Mental status examination revealed a sad expression, depressed mood and labile affect. (Tr. 100). In addition, "his speech was loud and pressured, and he needed frequent reminders to lower his voice." Id. He also noted depressive symptoms such as loss of interest, feelings of guilt and worthlessness, sleep disturbance, fatigue, loss of sexual interest and impaired concentration. Id.

Dr. Parsons noted that Plaintiff was able to do his own shopping, cooking and cleaning, enjoyed reading and watching television. (Tr. 101). As for social activity and relationships, however, he said Plaintiff "is a guarded and at times paranoid individual who had difficulty trusting others. He is close to a few of his relatives. He is a difficult person to engage." Id. Dr. Parsons additionally noted that Plaintiff "had significant difficulty attending, concentrating, and focusing. He needed constant redirection, and questions had to be repeated because he kept getting sidetracked." Id. Finally, Dr. Parsons indicated that:

> [Plaintiff] is in a great deal of emotional turmoil and lacks adequate defenses to keep himself reasonably comfortable. He is depressed, worried, tense, and nervous. He has consistently demonstrated poor judgment over the years and does not seem to profit from experience. He harbors chronic feelings of insecurity and is indecisive. He is not actively involved in life situations and is pessimistic about his future. He is nonconforming and suspicious of the motivations of others. He can also be irritable, sullen, and argumentative. The claimant has some odd beliefs and is eccentric and peculiar. He has been consistently irresponsible throughout his life....Due to the seriousness

> of his psychological problems, [Plaintiff] is not able to maintain gainful employment. He would not be able to respond appropriately to instructions from supervisors or coworkers. His is easily distracted and has difficulty focusing, which impairs his ability to function effectively in a work environment. He is a peculiar and impulsive man, which would make it difficult for him to interact with coworkers, supervisors, or the general public.

(Tr. 100, 102).

In addition to his report, Dr. Parsons completed a supplemental questionnaire as to residual functional capacity in which he rated a moderately severe impairment in Plaintiff's ability to relate to other people, including the ability to respond appropriately to coworkers, the ability to attend and concentrate in a work setting, the ability to perform activities of daily living, and in several other areas. (Tr. 103-104). He rated a severe impairment in Plaintiff's ability to respond appropriately to supervisors and to respond appropriately to customary work pressures. Id.

The record also contains a consultative evaluation concerning Plaintiff's physical limitations performed by Dr. Jay Burstein on August 21, 2006 at the request of the ALJ. (Tr. 105). Dr. Burstein noted that Plaintiff complained of back and knee pain but found no objective evidence of such impairments and no functional limitations resulting therefrom. (Tr. 106).

**A. The ALJ Properly Evaluated Plaintiff's Mental Impairments**

The ALJ decided this case adverse to Plaintiff at Step 2. He concluded that the objective medical evidence failed to establish the existence of a medically determinable mental impairment that could reasonably be expected to produce Plaintiff's symptoms. (Tr. 13).

The medical record in this case is thin. In fact, at Plaintiff's first hearing, the ALJ continued the matter due to the lack of medical evidence. (Tr. 128-135). Further, much of the medical evidence of record deals with Plaintiff's physical impairments which are not at issue in this appeal.

Although Plaintiff does not dispute that the medical record is limited, he argues that the evidence was sufficient to meet his "de minimis" burden at Step 2. Plaintiff also alleges that the ALJ erred by not evaluating his mental impairment using the special technique described at 20 C.F.R. § 416.920a. Finally, Plaintiff contends that the ALJ erred by not giving greater weight to Dr. Parsons, his consulting psychologist.

Plaintiff did not initially allege disability due to depression or personality disorder. (Tr. 44, 75). Several weeks before Plaintiff's first ALJ hearing, Plaintiff was evaluated on May 15, 2006 by Dr. Parsons, a consulting psychologist, at the request of Plaintiff's counsel. (Ex. 3F). Dr. Parsons opined that Plaintiff had major depressive disorder and a personality disorder with antisocial and schizotypal features. (Tr. 101). He concluded that Plaintiff "is considered to be disabled from a psychological perspective apart from his substance dependence issues, which are in early partial remission." (Tr. 102). Dr. Parsons described Plaintiff's presenting problem as:

> I have problems with my back and knee, and I have not seen a doctor in over a year. I am homeless and I can't work. Things ain't working out with my common law wife. It's just not good. I've been in and out of 'the joint' (jail) a lot of times.

(Tr. 97). Dr. Parsons indicates that Plaintiff "suffers from a major depression" but this is based entirely on his one-time evaluation of Plaintiff, as there is no indication Dr. Parsons had any treatment relationship with Plaintiff or reviewed any mental health treatment records of other providers.

Although there are references in the record to past mental health treatment (see, e.g., Tr. 118), the record is devoid of actual evidence of such treatment. For instance, on December 20, 2006, a licensed clinical social worker at the ACI noted that Plaintiff "only received treatment during a previous incarceration and...did not seek any type of treatment in the community." (Tr.

114). Plaintiff's affect was assessed as "appropriate," his mood as "euthymic" or normal and his mental state otherwise normal. Id. Furthermore, the record reflects that Plaintiff's counsel requested, in September 2004, that a psychological consultative examination of Plaintiff be cancelled "as they will be setting up CE with one of their consultants." (Tr. 85).

Plaintiff contends that this case should be remanded because the ALJ failed to comply with the "special technique" required under 20 C.F.R. § 416.920a in assessing the severity of Plaintiff's mental impairments and failed to adequately consider Dr. Parson's consultative opinion.

As Plaintiff correctly notes, in evaluating a claimant's alleged mental impairments, the ALJ is required to follow a "special technique" outlined in 20 C.F.R. § 416.920a. Pursuant to the technique, the ALJ must determine whether or not Plaintiff's impairments are "severe" by rating the functional limitation which results from the impairment(s) in four specific areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 416.920a(c)(3)-(4), (d). While the ALJ should normally follow a mandatory regulatory review procedure, several courts in this Circuit have found that the failure to explicitly follow the prescribed technique is "harmless error" if the record otherwise supports the ALJ's conclusion and a remand would not "change, alter or impact the result." See, e.g., Arruda v. Barnhart, 314 F. Supp. 2d 52, 79-81 (D. Mass. 2004). See also Querido v. Barnhart, 344 F. Supp. 2d 236, 250-54 (D. Mass. 2004). Because of efficiency concerns, this Court sees no benefit in a meaningless remand and agrees with and adopts the standard articulated above, which reviews whether remand would change, alter or impact the result. See Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005) (failure to follow a required regulatory review process requires remand but only when the record contains a "colorable claim" of mental impairment).

Here, Plaintiff has simply not pointed to any objective medical evidence of a severe mental impairment which would justify a remand. The ALJ found Dr. Parsons' evaluation to be "biased" and noted that it is a "one-time assessment from a one-time examiner, and, as such, is of no value in correctly diagnosing [Plaintiff's] impairments or in determining his level of mental functioning over the long term." (Tr. 14). Further, although Dr. Parsons assessed total disability, his prognosis was "guarded" and he noted that Plaintiff might benefit from psychotropic medications and counseling. (Tr. 102). The ALJ's evaluation of Dr. Parsons' opinion is supported by the record and entitled to deference.

The limited nature of the record must also be considered in the context of this case. In his Reply Brief, Plaintiff's counsel asserts that Plaintiff "missed a consultative examination scheduled by the state agency due to his incarceration and his attorney scheduled another after his release." (Document No. 9 at 1). Thus, he argues that counsel should not be faulted for "assisting in the development of the record by arranging a consultative exam." Id. However, the record does not reflect that scenario. Rather, it indicates that counsel's office called the state agency on September 14, 2004 and requested that "psych CE not be scheduled as they will be setting up CE with one of their consultants." (Tr. 85). (emphasis added). The state agency was not asked to reschedule the "psych CE" after Plaintiff's release from prison so that the record would include an "independent" evaluation. The request was that a "psych CE not be scheduled." Id. The request of Plaintiff's counsel did not assist in the development of the record but resulted in a more limited record consisting of one opinion from a retained and arguably "biased" consultant. Plaintiff should not be rewarded for limiting the record to an opinion from "their consultant." Id.

Further, the medical expert's limited testimony does not support Plaintiff's position. Dr. John Ruggiano, a Psychiatrist, testified briefly and confirmed that the psychiatric record was limited to Dr. Parsons' evaluation. (Tr. 148). Dr. Ruggiano described Dr. Parsons' personality disorder diagnosis as "feral cat syndrome" and noted that someone with that disorder would have significant difficulty working with others. (Tr. 149). Dr. Ruggiano was not asked by Plaintiff's counsel to express his own opinion as to whether Plaintiff actually had that disorder or any "severe" mental impairment, or what specific working limitations might result therefrom. Thus, Dr. Ruggiano's generic description of a condition diagnosed by Dr. Parsons is simply not supportive of Dr. Parsons' diagnosis. In other words, Dr. Ruggiano described what Dr. Parsons diagnosed but did not offer his own opinion as to whether he concurred in the diagnosis.

**VI. CONCLUSION**

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 8) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 7) be DENIED. Final judgment shall enter in favor of the Commissioner.

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
April 29, 2008